May it please the court, I would like to reserve five minutes for rebuttal. Why don't you tell us who you are for the record. Jeremy Vanderloop, and I'm proud to represent E.T.S. Ventures. In 2016, my clients purchased the assets of a failed trailer company and then invested $280,000 to build a custom race trailer. It's now been ordered seized by the government and apparently sold by the court, and my clients need your help to require the district court to follow proper procedures. I wasn't aware that the court had determined the ownership issue. I thought the only thing the court did was to freeze the asset, which is still in the possession of your client. Is that not right? I would say that the determination or the failure to determine the ownership issue is part of the problem. In fact, there's no claim ever filed anywhere by anybody claiming ownership to this trailer in the court, and that's the fundamental. Well, I thought that there was something in front of the magistrate judge where a discovery schedule was set, so expedited discovery, but your client didn't want to participate in that. And seemed intent on selling this in another state, right? Ohio or something like that? The trailer was constructed in Ohio. My client claims the right to sell the trailer because it's our property. There's nothing controversial. I'll agree with that. We would like to sell the trailer. At this point, we're out of deference to the court abiding by the law. Well, and I'm in pain of potential contempt if you sell it in violation of the order. And we feel very, you know, bullied by the court's contempt powers right now. So I thought you said the trailer had been sold. You have the trailer, don't you? Right now, I submitted a 28-J letter with the court's recent findings, you know, from last week. As I interpret their motion for clarification, they've now given the monitor the right to actually sell the trailer. But this trailer hasn't been sold. At this point, it has not. We were marketing it for a time, trying to find a buyer. So you have possession of it. Right now. And it hasn't been sold. It has not been sold as of today. And we are not making any efforts to sell it. We do believe that the monitor intends to. The trailer is losing value at this time, and it's a 2016. Have you approached the government with a stipulated sale? Because I suspect the government would just as soon have cash as opposed to a motorsport trailer. And we'll get ahead into the contempt that's pending right now. That was the plan, was to actually turn the trailer into cash. Okay. But I'm just asking, have you talked to the government about agreeing to a stipulated sale? And maybe depositing the sales proceeds into the registry of the court pending a determination of ownership? We wanted to do that. I thought you just wanted the money. Well, we think we're the owners, so, yes, we want the money. But we would be agreeable, and I actually discussed with the FTC representative that that's exactly what we would do. And, unfortunately, the monitor, when they got appointed, took issue with that. The monitor didn't want to sell the trailer? They want to sell it themselves, and they're going to sell it for less, which is why we want to sell it at private party rather than auction. And we just got held in contempt for having the trailer listed on our website. So that issue isn't up on appeal yet. Because you couldn't reach agreement with the monitor and the government, right? I mean, presumably, if you could reach agreement with them, then they wouldn't have any objection to whatever the terms you agreed to were, and then you could offer the trailer for sale. Is it because they don't trust you to give them the money? I don't know. I frankly don't know. I think that's what they would say. And there wasn't a monitor. There wasn't a monitor at the time that we were doing this, so we're incredibly puzzled. And we don't think that this preliminary injunction that was issued in August, and it is a preliminary injunction. This isn't a stay. Well, you're kind of hung up on that in your briefs, but what about the statutory authority under the FTC Enabling Act that gives district courts nationwide jurisdiction in order to issue appropriate orders in aid of collecting restitution on judgments that the FTC gets for fraudulent behavior? The order was first issued pre-judgment. But the statute provides for that. I would say that the FTC Act does have a provision where they can get an order from the court that then expires 20 days later. Well, you say it expires under Rule 65, but it's not a Rule 65 order. I mean, we see these things all the time in SEC enforcement proceedings, in freeze orders, in RICO cases. I mean, there are a number of analogies here, and you seem to be just ignoring that whole body of case law, insisting that it's nothing more than a temporary restraining order and a preliminary injunction. And I'm suggesting to you that that's not the legal basis on which the commission or the district court has acted here. Well, I would direct you to the excerpts of record on 12 and 13. Look to what the court actually wrote. She actually calls it an in rem injunction twice. If you look to the original asset freeze order, the preliminary injunction in this case on 28 in the ER, it actually recites that this order binds those that are an active constituent, you know, a defendant. But that's not unusual in these kinds of, that language binding, you know, agents or anybody with actual notice of the order. That's pretty standard language in my experience. And I would submit to you that Eldorado, as a non-party that has titled ownership of the trailer, is not subject to that asset freeze without something more. Well, it has actual notice. The problem it has now is that it knows about the existence of the freeze order. So it is now bound by the order. I think that the order, the scope, you know, is still under Rule 65, and before that just the jurisdiction of the court to reach non-parties. What the FTC would need to prove. The statute gives the court nationwide jurisdiction over these particular types of orders. So, I mean, you spent a lot of time in your briefs talking about personal jurisdiction. The only jurisdiction that the government has to satisfy is that your client is a company that does business in the United States and that it's in possession of a disputed asset that may or may not belong to the monitor and that the possessor has actual notice of the freeze order that the court has issued, and you meet all three of those requirements. So I don't know what we're doing here worrying about issues of personal jurisdiction. Well, I think that the jurisdictional requirement still stems from showing that this is an asset of Level 5. Level 5 is the defendant. Right. And the district court made a preliminary determination based on the payment to Bruce Thompson before this all occurred, or the trailer was titled in your client's name, that the trailer was fully paid for, even though it had not yet been completed at the time that your client acquired Bruce Thompson. Before that, you know, the government has to file a claim. There has to be some request for a determination that this actually is an asset of Level 5. But what I'm suggesting to you is there's been, in essence, a preliminary showing. It has not fully determined the question of ownership, but there's enough in front of the district court to authorize the issuance of the freeze order to prevent the dissipation of the asset before an adjudication of true ownership can be completed. But we're not a nominal defendant. This is like sheriff. You don't have to be a nominal defendant. You are a possessor of an asset that the government has convinced the district court there's reasonable grounds to believe may be an asset of the, I'll call it the receivership. I'm still not quite sure I understand the difference between a monitor and a receiver here. Because it walks and talks like a duck to me, but I think it's a receiver. But in any event. And Level 5 is a defendant in this separate proceeding, correct? I agree. And the amount that they're trying to get from those defendants for its unlawful lending and collection practices is way more than what the value of this is, and they're claiming that this is, you know, that it's an asset of paying that off. And that's, that claim's never been made. That claim's never been filed. And that's where, you know, I think when this Court talked about. Because you keep trying to sell it. They're trying to stop you from selling it so that it will be available to satisfy. But that other case isn't, I don't know what the status of the other case is, but it's not done, right? What other case? The one, the larger action with Level 5. It's over. It's over. Final judgment happened. And how much? Final judgment happened. At that point, we took the. How much is final judgment for? It's for a tremendous amount of money. Millions. We have nothing. It might even be in the billions. I think it is millions. So that case, you know, at that point. So then your next argument would be this really isn't very much money, so it won't even go very far to help satisfy it. So let us sell it and let us have it, right? No. Our argument is that we own the trailer. And, you know, we need to be able to address that. We should have the procedural right to say that this Court lacks jurisdiction. We should have the procedural right to file a Rule 12 motion. And this is where I'm talking about what this Court said in SEC v. Ross, which I think is important. The potentiality of jurisdiction doesn't mean that there's actual jurisdiction. But you did have an opportunity to participate in a proceeding where there was an expedited discovery schedule in order to reach the question of who owns the asset. But you chose not to respond to the government's discovery request. Well, that's not entirely true. I objected to the jurisdiction of the Court because we're very conscious here. Let's assume that you lose on jurisdiction based on the FTC Enabling Act. So you are now a possessor of a disputed asset, a putative asset of the monitorship, but you also have a claim to ownership. Why is it a violation of due process for the statute to say you have to adjudicate that claim in the District of Nevada, which is the Court that issued the freeze order and which is administering the monitorship assets? And my answer to that is that the problem is that claim isn't filed or moving towards adjudication. You could file a claim is what I'm suggesting to you. You had the opportunity, and still have I guess, to file a claim in the District of Nevada saying, hey, this is our trailer. And then there will be a judicial adjudication of that issue. We took the opportunity to, after judgment, before a monitor existed, before any stay happened, to join Level 5 in Ohio. Right. And the Court found that you violated the terms of the freeze order by doing that. Which didn't, in our rent, there was no stay in that freeze order. So we're very, you know, puzzled as to, you know, why that was a violation. Had the FTC . . . That action, I guess, would be subject, would it not, to the All Writs Act, which empowers the District Court to enter such orders as is necessary to effectuate its judgment. There wasn't a judgment yet. There was a preliminary injunction at the time. But the All Writs Act is pretty broad, counsel. I mean, it basically gives Federal District Courts the authority to enter appropriate orders as necessary to aid their jurisdiction and, in this case, preserve the dissipation of assets before adjudication to ownership can be resolved. And I think Rule 65 is pretty broad, too, which not only allows you to . . . You're back to a rule of civil procedure that I don't think is applicable here. We're talking about the statutory authority of a United States District Court in an action and enforcement proceeding brought by the Federal Trade Commission. And that's a different creature than a private Rule 65 proceeding between private parties. But if the injunction or the asset freeze itself is styled as a preliminary injunction, how can the enforcement order be something else? And how can we never be entitled to hearing to show that we own the trails? You could. You could. You could. And what it seems like at bottom to me, and going through this and everything, it's like that you're putting out all these things that distract us from the fact that you want to sell something, but you don't want to prove that you have ownership of it. You want to sell it. You want to get the money. You want to get out. They've given you an . . . You have opportunities here to actually prove that it doesn't belong, that they can't reach it, that it is, in fact, yours. But if you can sell it really quick and you can get the money and you don't have to prove that, then it will be gone and there won't be anything that they can do about it. This — it really all seems like all of these distractions as to what's really going on here. And we stand ready to prove, and we stood ready when we filed this motion to dissolve and demanded a hearing, we stood ready to prove that we own the trailer. Okay? When the Court issued final judgment, we believed, citing this Court's precedent, that all preliminary injunctions dissolved. We filed in Ohio essentially a quiet title action to the trailer. We're still ready to prove. The FTC or anybody else didn't take the Court's opportunity to file a claim for the trailer pursuant to that expedited discovery schedule either. And you didn't take the opportunity to pursue that remedy when it was made available to you in Nevada? And there isn't a claim for us to address. We are in the status . . . Well, you have to make the claim. That's what I'm suggesting to you. And I think that the government has to make the claim originally that Level 5 owns the trailer and we're defending it because we're the titled owner under the status quo. They need to actually do something. There needs to be maybe not a full formal proceeding, but somebody has to file a pleading saying that Level 5 owns the trailer and why. As I sit here today, I still don't understand why the government believes that this  When did they acquire it? Under what theory of law? You've seen all the evidence. In fact, your client, I presume, has the billing invoices for the work that was done by Bruce Thompson and the payments that were received from Level 5. Did you not? We do. And it does not follow necessarily that because they paid a different company money . . . Well, a company that you may have merged with. I know you insist that it was just an asset acquisition, but I think the government has that it was in fact an actual merger, including liability. And I think you're on to what the real case should be. It should be whether there's successor liability here. Then why don't you litigate that in the forum that was provided to you under the law? Well, there's a couple of reasons why. There's a third person with their head in the ring for ownership of the trailer. It's Bruce Hyperformance. Second, there's a binding . . . But you're the successor, are you not, to Bruce Hyperformance? We are not. They're independently claiming ownership of the trailer. Okay. So, and the second, there's a valid forum selection clause between Level 5 and Bruce Hyperformance that's in Ohio. If we are, if they're going to argue successor's liability, Your Honor, they're going to be required to litigate it where we filed. We just want to do this once. We just . . . Well, we may tell you otherwise once you get the ruling from this court. Well, if . . . you're going to have to litigate ownership in Nevada, are you prepared to do that? If you tell us that we have always abided by the court's orders as we understood them throughout this case . . . Okay. We'll try and make it clear. If we lose the jurisdictional argument, I hope that the court at least requires whoever it is that's claiming ownership of the trailer to file an action so that we can raise whatever defenses we have to ask. That's what the problem is with this order. I still think that should involve the dissolution of what actually happened here on this record because this wasn't proper. You know, just saying that trailer is ours, you're surrendering it to the government, you're seizing it right away. It's more than that. I mean, there was evidence that was presented to the district court suggests, I'll call it, this is the wrong term, but probable cause to believe that the trailer is actually an asset of Level 5. And I agree. It's not just positive, but it's a pretty strong showing. And, in fact, there was a misunderstanding, I think, by the FTC in that Bruce, who is in our mind the bad guy here, told the FTC this is the bill of sale, but it wasn't the bill of sale. It was actually the first page of a seven-page purchase contract, and that's what the court relied upon when it issued this ex parte. Okay. But now we're getting into the merits of who really owns the trailer, right? Which we would like to do at some point. You know, move us towards that. Okay. I've let you run over three minutes. Let's hear from the government. May it please the court. Jack Messler for the Federal Trade Commission. Good morning. The court has articulated our position pretty well, but I do have a couple of points. The main question here is whether a district court, in the midst of handling a $1.3 billion that's billion with a B fraud, is permitted to freeze assets that could be sold to satisfy a judgment and provide redress to consumers. Of course it can. That's part of the court's inherent jurisdiction. So what's this, about $500,000 max or something here? I think the purchase price was over half a million dollars. Like $500,000, right? Yes. Somewhere. Okay. So, yes, the court has inherent jurisdiction based on its jurisdiction over the parties, including level 5. And level 5, there's no dispute, paid for this trailer. And normally when you pay for something, you own it. So the district court is allowed to say this isn't the only asset. There's a lot out there. There are Ferraris that are supposed to be transported by this. There are houses. There are assets. And many of them are held with third parties. So we're going to freeze them all until we sort this out. And that's the order that's under consideration here. Now, they also are complaining, Eldorado is, about the order that specifically applied the asset freeze to level 5. Well, I mean, to Eldorado. And your theory is that all those assets are traceable to the fraud. Is that correct? That they were purchased or acquired with funds that were the proceeds of the $1.3 billion fraud. That's correct, Your Honor. The, yeah, so we gave Eldorado notice. The Federal Trade Commission said, it looks like you have this trailer. You need to hold on to it because there's this freeze order. And the response was, we don't think that applies to us. In fact, we're going to sell it in the next two weeks. Unless you get an order telling us not to. So, dutifully, we went out to the court and said, they're not listening to the freeze order. Can we please have an order telling them not to sell it? And that's the issue that we're complaining about. So where now can they, where, what is their, from your perspective, what is their option in terms of now to establish that it's really theirs? And not the proceeds of the fraud? So, in the district court since that time has entered its final judgment and entered a second freeze order and appointed a monitor. And I agree with Judge Tallman that it's the same as a receivership. Eldorado has the opportunity to make a claim against the monitorship based on its claim to the ownership, to own this particular trailer. There's been no final adjudication. They haven't turned it over. It hasn't been sold. So they do have that opportunity. Is the FTC willing to engage in some sort of a stipulated sale? Because I assume you'd prefer to have cash as opposed to a car hauler. Well, just to be clear, so before the judgment it was more up to us, although we couldn't stipulate anything without the court agreeing because the asset was frozen. And we did enter into some of those discussions. The main problem was they wouldn't agree to put the ‑‑they wouldn't agree in advance that they would put the proceeds of the sale into the registry of the court. So that never got quite off the ground. Now that we have the ‑‑ the monitorship has established that the claim to the trailer on behalf of Level 5 belongs to the monitors. So with the contempt and other proceedings between Level ‑‑ between the monitor on behalf of Level 5 and Eldorado, I'm not sure they have the relationship where they're going to come to much agreement. They don't dispute that the trailer ought to be sold. They're concerned that the monitor, although I don't know what evidence they have to support this, is simply going to dump this off at some fire sale and therefore they will not get the value out of it as a credit that they should otherwise get. Couldn't that just be resolved by the court? I think, yes, the court could resolve that. The court could certainly order that the trailer be ‑‑ that there be some sort of effort at private sale and agreement at private sale, and if that doesn't work, then an auction. Sure, to the extent ‑‑ Well, let me ask you this. It seems to me the only way they can get any money is they're not defendants in that $1.2 or $3 billion judgment, right? The only way they can ever get $500,000 or whatever, if they can get any money out of it, they have to show it's theirs and that it's not derived from the fraud, right? Well, I think that's right, yes. Because if it's got ‑‑ if a court finds that it's from ‑‑ it's part of the fraud, then they're not ‑‑ it doesn't matter whether it sells for $500,000, $700,000 or whatever, it's going to go in to satisfy the one point. So a fire sale, if it belongs to the fraud, doesn't really matter to them, does it? I think that's right, Your Honor. The ‑‑ Well, I'm just trying to ‑‑ it's ‑‑ everyone's got us all off out here, and I'm seeing this trailer with a certain amount of them, you know, call me simple in my thinking, but it just seems like all of this is all distractions about what's the elephant in the room here. Yeah, I think you, again, have hit the nail right on the head. The ‑‑ I mean, basically what happened in this case is Eldorado tried to pull a fast one. They bought this company. They finished this trailer intending to deliver it to level five, and I just direct, Your Honor, to ‑‑ direct the court to the excerpts of record filed by the monitor at about page 30. That's their supplemental excerpt to the record. And there you'll find a police report when there was a dispute between Eldorado and the former owner of Bruce Transporters, and there's a police report where a police officer went and talked to all the people and found out what they said. Well, if this trailer's the fruit of the poisonous tree, they're not getting any money, right? Well, what it is is they're the same company. They owe level five a trailer, and they think they're going to get to keep it instead of giving it to level five. So, yes, I think it's ‑‑ all of that is a distraction. The issues that are really on appeal here are, you know, was the court allowed to freeze it so that this could all get sorted out? Yes, and then after the actual order that's on appeal, was the court required to ‑‑ was it an abuse of discretion to say, no, I'm not ready yet to lift the asset freeze? And I think that was also within the court's discretion. They're claiming due process violations, too, aren't they? They are, but it's unclear if they really have been either deprived of a real property right. They still have the trailer. The only thing they've been prevented from doing is selling it, and they did get notice of that, and they still have an opportunity. I mean, they had an opportunity before judgment to use the expedited discovery process and adjudicate their claim there. That goes exactly to my earlier, my very first question to opposing counsel, which was, you have the trailer. Yes. It hasn't been sold. Yes, that's correct. So, yeah, they still have it, and it could still be sold. And they had a process. They could have availed themselves of it before judgment, and there still remains a process with the ‑‑ with the receivership to adjudicate their claim now. Did the district court abuse its discretion by deciding not to lift the asset freeze? We think not. Can you address the mootness issue? I forgot to ask Mr. Vanderloop that question, but we'll chat with him about it on record. Sure. So there are two orders that freeze, that impose an asset freeze on this trailer. One was entered prejudgment, and then there was the second order that applied that asset freeze to this trailer. And then there was a order after judgment in which the court appointed a monitor and, again, froze all the assets of Level 5. And just one minor point there, it does say that the monitor should sell Level 5's assets, but Level 5 had agreed to that. The defendant itself agreed to sell its assets. The mootness question is, all of the arguments in Eldorado's brief are addressed to the prejudgment ‑‑ the prejudgment asset freeze. Even if ‑‑ I mean, for the reasons we've talked about, those arguments are not meritorious, but even if you agreed with them, they don't provide any reason for lifting for saying that the postjudgment asset freeze is not validly restraining the sale of this trailer. And, in fact, I think it's page 3 of the reply brief, they concede that the court had jurisdiction to enter the monitorship order. So all of the jurisdictional arguments are out. But is it your position that there were separate orders, or did the ‑‑ is it the January order that we're talking about? Did the January order simply continue in place the equitable remedy of a freeze that had been initially ordered back in, what was it, August or September? I think the monitor says they restated it. I think our brief says that the court reimposed it or entered a new one that superseded it. So is this ‑‑ I hesitate to use this analogy. Is it similar to converting a preliminary injunction into a permanent injunction after the trial on the merits? Well, I mean, there are obviously differences because it's not permanent. It's still an asset freeze that continues for a particular period of time. Depending on further order of the court. But as an equitable matter, the same thing is going on. The court is protecting its ability to render judgment. So what does that do to your mootness argument, I guess, is what I'm wrestling with. We didn't really argue that it's moot. We just said that they haven't raised any arguments that go to the second order. But if it's a continuation of the same equitable remedy of a freeze, does it matter? I don't know that it matters all that much. But, for example, their last two arguments are all about whether the court should have I mean, if you think that that's bad, but are okay with the monitorship order, then you just don't have to consider those arguments. Maybe I'm hung up on rule four, but I thought that the notice of appeal, the argument was that the notice of appeal should have been more specific in listing not only the initial freeze, but also what I'll call the continued freeze. That was the monitor's position. We didn't take that position. So the FTC is not urging that issue? We're not saying that it's moot. We said essentially it's a separate basis that's just not on appeal. Well, if it's moot, we don't have jurisdiction over the case. This will be a real quick decision. I don't think that the appeal is moot because the order that is on appeal is the order that denies their motion to lift the stay. So in our brief, we think that the court But which stay? The earlier stay or the monitor stay? It seems to me like it was the earlier stay, and then now you have a monitor stay, and the monitor stay, and that's the monitor's argument. His argument is, well, wait a minute. They're appealing for something that Well, it's not 100 percent either way from the record. They kind of blend. It seems to me like they've kind of blend together a little bit. They do blend together, and this is why. Before judgment, immediately after the court entered the initial asset freeze, that's when El Dorado moved to lift that freeze. So the only one they asked to lift was the prejudgment freeze. Well, then some stuff happened, and there was a post-judgment asset freeze, and that's when the court decided this earlier motion. And in the court's decision, it says, it refers to the asset freeze order using, you know, capital letters, but it refers to both the prejudgment asset freeze that way and the monitorship order that way. So it's not really clear what the order is talking about. Well, from the government's position, you want one continuous freeze, do you not? You don't want any gaps. No, we don't think there was any gap. And I guess we don't really need this point in order for the court to affirm. I mean, if the basis of their challenge is the court was without authority to enter a freeze for longer than 10 or 20 days, then the fact that the freeze has continued to this point, it seems to me that would be sufficient for purposes of the notice of appeal to permit them to continue challenging. I don't think the court would need to hold that. All right. Anything else? If there are no further questions, we ask the court to affirm. Okay. Thank you very much. I'll give you a couple minutes. Just on the questions, some of the questioning there, Judge Ezra, you asked about whether there's anything in the record as to the difference in sales price. I direct you to ER 68. It's an affidavit as to my client, who has 30 years in the trailer sales business, talking about how it's likely to bring about $150,000 more at private sale. The other thing that I know is in the record is that a similar trailer, there was another one that was like this that was sold at auction, and it brought only 220 bid price minus commission. 220? 220. Wow. And realistically, the value is dropping. Nobody would buy a 2016 Cadillac new, okay? So right now the value of the trailer is less than $300,000, and this paralysis, this due process deprivation we're talking about is the right to sell the trailer. I also want to correct my understanding as to what our agreement was. Eldorado always agreed to deposit the money in trust. If there was a private sale, it would have been put to the court for further order because the acid freeze allows, I think. The disagreement we still had was where ownership would be adjudicated. I was not willing to concede that Nevada. So you're tying the venue for the resolution of the ownership to your agreement to stipulate to deposit the proceeds into the registry of the monitor or the court. And what happened really was the FTC, and we, I believe, agreed, okay, go ahead and market the trailer. You know, if we find a buyer, we'll cross that bridge when we get there. We believe that the appropriate place to determine who owns the trailer was Ohio because it's Ohio law applies the form selection clause, all of this, and that nothing about this case involved Nevada. I would like to just point out again San Vicente because I think that case controverts some of the arguments made. This court held in San Vicente a couple of things. One is before non-party's assets are put into a receivership, they should be offered notice and an opportunity for a hearing. It's hard to see, but at ER-222, I only put one page of my briefing in on the motion to dissolve, but I explicitly asked for an immediate hearing, and this trailer was put into the monitor ship estate, and the monitor authorized to sell it because now the court's saying it's a level 5 asset, so monitor, go ahead and sell it. We didn't have notice and an opportunity for a hearing. I thought that your request, though, is what triggered the magistrate judge to set an expedited briefing schedule, or for discovery, rather. I don't think so. And if you look to the transcript. Why did the magistrate do that? Because the FTC asked him to. There was no, if you look to the transcript of the hearing, and I put it in the record. I can find it, but there's the transcript of that discovery hearing, Your Honor. I was objecting to the jurisdiction saying, what claim am I addressing? Is this assessor liability? Is this some, I think one argument is just, well, they paid for it, they own it. Okay. Well, I don't think that applies to title business. I'm entitled to know, my client is entitled to know what theory of law they're proceeding on. I'm entitled to, if I don't think venue is proper, file an objection. I'm entitled to think, if I don't think jurisdiction is proper, file an objection. We were deprived of that because they took a shortcut. What they needed to do is what this court required in Ross, is that because here, really they need to argue assessor liability to get ownership of this thing. But, I mean, you still have possession of the asset. There hasn't been an adjudication yet of the ownership of the trailer. And it seems to me that's an incumbent upon you to make a claim with the monitor, I assume you've done that at least informally, maybe through letters or something, insisting by proof of your Ohio title that the trailer belongs to your client. Well, I don't think. Do you not? And this is what, I think that we're in the position of owning it at the status quo because we're the titled owner, presumed owner. And you possess it. And my point is that the government, if they think it's actually owned by level five, they should be incumbent on making a claim and serving us with assentments. So to then bring that into the subject. So your position is you don't have to do anything in the face of a federal district court order that says there's a showing here that this asset belongs to the receivership, that the government has to do more than that. They have to actually initiate a new proceeding somewhere in a state or federal court in Ohio to do that. Is that your position? They need to do something. You know, if you look at SEC versus. But what? I'm trying to get an answer to my question. What is it that you think the government needs to do beyond what they've already done under the statute? At the very least, an informal claim filed, like the one for discouragement or an application saying, hey, this trailer is actually ours. You need to own it. We believe we own it for this reason. I think that more properly, because we're really arguing successor liability here, they should file a complaint and a summons and initiate an ancillary proceeding. And had they done that, this case would have tracked correctly. We would have objected to the jurisdiction of the court at that time. And in August of 2016, we would have won, because there wasn't a receivership yet. There wasn't a stay. None of it had gotten to that point. But instead, you know, they took the shortcut. And I believe that what's really happening, this case is about the government not filing a claim so that we can't, we don't want to be in Nevada. We think that the case should be in Ohio. Believe me, I understand that. The first time we ask, under your precedent, the first time we ask that court in Nevada for affirmative relief, we've waived our jurisdiction. We shouldn't be required to do that. They should have been required. Even though the government has made a showing that this asset was procured with the proceeds of illegal activity. I mean, I don't understand why you're in a position any different from the holder of an asset in Ohio or Wisconsin or wherever the asset is, where the government is saying it was purchased with the proceeds of drug trafficking. And I think this is, you know, the difference between a trailer and a cause of action. What Level 5 did, they paid $600,000, and they didn't receive what they paid for. So there's a contractual. Let's assume, for the sake of our hypothetical, it's $600,000 of blood money. It's money that was obtained from illegal activities, in this case fraud. So why are you any different from an entity that is claiming title to the asset, saying, Look, I wasn't involved in the fraud. You know, I procured this thing lawfully. Either I'm a bona fide purchaser for value without notice, or I acquired title some other way. But my hands are clean. And I think that if it had been just Bruce Pie Performance, which was the contracting entity that received the money, we would have never received a dime. That money was gone by the time we bought this equipment. Okay? But your equipment, this trailer wasn't even listed in Schedule A, was it? To the acquisition agreement? Our position is it will work in progress. Okay. Because it was. . . I've let you run over. I think we understand your position. Thank you. Thank you very much. Case just argued is submitted. We will be in recess before we hear the last case on the calendar.
judges: Tallman, Callahan, Ezra